UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
TIM SMITH, et al.,                 )   No. C11-1311RSL
                                   )
                   Plaintiffs,     )
        v.                         )   ORDER GRANTING MOTION TO
                                   )   DISMISS AND GRANTING LEAVE
UNITED STATES OF AMERICA,          )   TO AMEND
                                   )
                   Defendant.      )
_____)

This matter comes before the Court on defendant's "Motion to Dismiss." Dkt. # 17. Plaintiffs allege that, while incarcerated at the Federal Correctional Institution in Sheridan, Oregon, they were offered the opportunity to participate in a Residential Drug Abuse Program ("RDAP") which would make them eligible for early release in December 2009. The Bureau of Prisons ("BOP") prepared written agreements regarding plaintiffs' participation in the RDAP, which the individual plaintiffs signed based on the BOP's representations that the successful completion of the program would result in a 12 month reduction of their sentences.[1] Shortly after plaintiffs entered the RDAP, BOP revised the guidelines for determining the length of an

---

[1] Although the complaints filed in this matter state that copies of the agreements are attached as exhibits (Dkt. # 1 at 2; Dkt. # 2 at 2; Dkt. # 8 at 2), the agreements are not in the electronic docket. Because the agreement is referenced extensively in the complaint and forms the basis of some of plaintiffs' claims (United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)), the Court has considered the copy of Ricky Garza's agreement that is attached to the Declaration of Gregory P. Cavagnaro (Dkt. # 19), Ex. A.

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND

inmate's sentence reduction upon completion of the program. Although no details regarding the calculation of release dates are provided, plaintiffs allege that the revision adversely affected their release dates. Plaintiffs allege that the BOP knew about and intentionally failed to disclose the upcoming changes at the time the RDAP agreements were negotiated and signed.

Plaintiffs objected to the change. Plaintiffs allege that their complaints and efforts to obtain judicial relief triggered retaliation by and threats from BOP staff. In particular, plaintiffs allege that they were assigned extra duties, were told they could not win against the government, and were threatened with false reports designed to further impede plaintiffs' ability to obtain release or to cause the revocation of parole. Mr. Smith filed a petition for writ of habeas corpus based on the change in the RDAP guidelines. The Honorable James A. Redden, United States District Judge for the District of Oregon, found that the BOP had impermissibly disrupted Mr. Smith's settled expectations when it retroactively disqualified him from eligibility for a one-year sentence reduction after telling him he was eligible. On January 19, 2010, Mr. Smith's petition was granted, and the BOP was ordered to transfer him immediately to a residential reentry center so that he could complete his 180-day community-based segment of the RDAP.[2] Mr. Smith and Mr. Carlson allege that they were told that their incarceration would be extended because they had complained about the RDAP guideline changes, and Mr. Smith alleges that, despite obtaining a court order for his release, the BOP ignored the order in retaliation for his decision to seek judicial relief. Plaintiffs do not, however, provide any facts in support of these allegations: no dates or calculations are provided from which one could determine that a delay occurred or how long it lasted. In fact, the evidence provided by plaintiffs with their opposition suggests no delay at all. Mr. Garza and Mr. Bailey were released from the

---

[2] Because plaintiffs' allegations of retaliation are, in large part, based on the existence and success of Mr. Smith's habeas petition, the Court has considered the orders attached as Exhibit D to the Decl. of Gregory P. Cavagnaro (Dkt. # 19). Although not alleged in the complaint, Mr. Bailey and Mr. Garza also filed petitions for writs of habeas corpus which were granted on June 1, 2010.

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND           -2-

halfway house on June 2, 2010, the day after they obtained their writs of habeas corpus. Mr. Smith and Mr. Carlson (who apparently did not file a petition for writ of habeas corpus) were released on June 21, 2010. According to Judge Redden, the application of the new RDAP guidelines to Mr. Smith would have resulted in a release date of August 9, 2010, twenty-one days after he would have been released under the original guidelines. The obvious inference from the facts of record is that, despite his bald allegation of delay, Mr. Smith's June 21, 2010, actual release date preceded the earliest date on which he could have been eligible for release as a result of his participation in the RDAP.

Plaintiffs filed this lawsuit in August 2011 asserting violations of the Civil Rights Act of 1964, intentional infliction of emotional distress, loss of consortium, false imprisonment, and breach of contract. Defendant seeks dismissal of all of plaintiffs' claims. Having reviewed the memoranda, declaration, and exhibits submitted by the parties, the Court finds as follows:

**A. Request for Continuance**

Defendant seeks dismissal of plaintiffs' claims under Fed. R. Civ. P. 12(b) for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. These are preliminary matters going to the Court's power to hear the case and the viability of plaintiffs' allegations. Nevertheless, plaintiffs seek a continuance of this motion under Fed. R. Civ. P. 56(d)[3] so that they can conduct unspecified discovery. Plaintiffs offer no legal justification for delaying consideration of a Rule 12(b) motion under a procedure set forth in Rule 56, nor have they provided any factual basis for their request for discovery. The issues raised by defendant's motion can be decided on the pleadings and papers submitted: no additional discovery or time is needed.

---

[3] Mr. Cavagnaro is advised that Rule 56(f), to which he cites in his memorandum, was recodified as Rule 56(d) effective December 1, 2010.

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND            -3-

**B. Lack of Subject Matter Jurisdiction**

Defendant's first argument is that the Court lacks jurisdiction over this case and that the action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Jurisdiction is a threshold matter that should be considered before addressing the merits of plaintiffs' claims. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-96 (1998). When evaluating its jurisdiction, the Court may consider facts outside of the four-corners of the complaint to assure itself that it does, in fact, have the power to hear this matter. Americopters, LCC v. Fed. Aviation Admin., 441 F.3d 726, 732 n.4 (9th Cir. 2006). The Court has, therefore, considered the documents attached to the Declaration of Gregory P. Cavagnaro (Dkt. # 19), Exs. A-E, for purposes of determining jurisdiction.

The existence of sovereign immunity deprives district courts of both subject matter and personal jurisdiction over a claim against the United States or its agencies. U.S. v. Mitchell, 445 U.S. 535, 538 (1980). The United States enjoys immunity from suit unless there is "an express waiver of this immunity by Congress." Tobar v. U.S., 639 F.3d 1191, 1195 (9th Cir. 2011) (quoting Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 280 (1983)). If the government consents to be sued, any limitations or conditions imposed upon that consent "must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276 (1957). If the United States has not waived its sovereign immunity with regards to a particular act or claim, this Court has no power to hear the case and dismissal is appropriate for lack of subject matter jurisdiction.

**1. Breach of Contract Claim**

Congress has waived sovereign immunity regarding contract claims with the following limitation: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). The Supreme Court has stated that the Court of Federal Claims has exclusive jurisdiction over nontort claims against the

United States for more than $10,000.  <u>Clinton v. Goldsmith</u>, 526 U.S. 529, 540 n.13 (1999). Defendant argues that this Court lacks subject matter jurisdiction over the contract claim because plaintiffs are seeking at least $50,000 in damages.

Plaintiffs fail to respond to defendant's jurisdictional argument.  Instead, they discuss the merits of their contract claim and the potential *res judicata* effect of the earlier habeas corpus action(s).  As discussed above, however, the Court's power to hear this claim must be determined before the merits of the claim are addressed.  Plaintiffs collectively seek damages exceeding $50,000, and Mr. Smith alone seeks lost earnings between December 24, 2009, and his release date of more than $10,000 related to the alleged breach of contract.  The Court therefore finds that the limitations and conditions imposed by § 1491(a)(1) deprive this Court of subject matter jurisdiction over plaintiffs' contract claim.

**2. State Tort Claims**

Through the Federal Tort Claims Act ("FTCA"), the United States has waived sovereign immunity for certain torts committed by federal employees.  28 U.S.C. § 1346(b)(1). Not every state tort is actionable under the FTCA, however.  Congress expressly limited the waiver set forth in § 1346(b), stating that it shall not apply to –

> \* \* \* \*
>
> (h)  Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680.  At least two of plaintiffs' claims are impacted by this provision.  The main

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND             -5-

part of § 2680(h) excludes from the general FTCA waiver claims arising from false imprisonment and misrepresentation.  While the proviso to § 2680(h) arguably salvages plaintiffs' false imprisonment claims, the misrepresentation claim is clearly barred by § 2680(h) and sovereign immunity.

With regards to plaintiffs' false imprisonment claims, BOP officers and employees have authority to make arrests for violations of federal law (18 U.S.C. § 3050; Bramwell v. U.S. Bureau of Prisons, 348 F.3d 804, 806-07 (9th Cir. 2003)) and are therefore "investigative or law enforcement officers" for purposes of § 2680(h)'s proviso.  The Ninth Circuit has, however, determined that the proviso does not save a false imprisonment claim unless the "investigative or law enforcement officers" committed one of the torts listed in the proviso while actually performing investigative or law enforcement activities.  Orsay v. U.S. Dept. of Justice, 289 F.3d 1125, 1133-36 (9th Cir. 2002).[4]  The facts alleged in plaintiffs' complaint do not give rise to a plausible inference that the BOP was acting in an investigative or law enforcement capacity when it failed to release plaintiffs in a timely manner. The false imprisonment claims are not, therefore, saved by the proviso to § 2680(h) and are barred by sovereign immunity.

Defendant also argues that, despite the specific lists of claims included in § 2680(h) and its proviso, plaintiffs' state law claims of intentional infliction of emotional distress and loss of consortium should also be dismissed for lack of subject matter jurisdiction because the gravamen of those claims is the misrepresentation regarding how early release dates

---

[4] This narrow interpretation of the § 2680(h) proviso has not been universally adopted. See Ignacio v. U.S., 674 F.3d 252, 255 (4th Cir. 2012) (concurring opinion) (acknowledging Orsay, but noting that, "[a]s tempting as it is to follow the lead of our sister circuits, settled principles of statutory construction prevent us from limiting the waiver of immunity contained in the law enforcement proviso. To begin with, absent an ambiguity in the words of a statute, our analysis begins and ends with the statute's plan language."); Sheppard v. U.S., 537 F. Supp.2d 785, 790-91 (D. Md. 2008) (declining to follow "the very narrow interpretation of the § 2680(h) proviso"); Harris v. U.S., 677 F. Supp. 403, 406 (W.D.N.C. 1988) (holding that "[t]he more viable reading of the proviso is that it does not restrict the category of intentional torts for which sovereign immunity is waived to those committed in the course of a search, seizure, or arrest.").

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND              -6-

would be calculated or the failure to timely release plaintiffs. "Regardless of the plaintiff[s'] characterization of the cause of action, § 2680(h) bars suit for claims based on conduct which constitutes one of the excepted torts . . . ." Sheehan v. U.S., 896 F.2d 1168, 1171 (9th Cir. 1990). Thus, the issue in this case is whether the conduct upon which plaintiffs' emotional distress and loss of consortium claims rests is conduct that is barred from suit under § 2680(h). For the most part, plaintiffs' emotional distress and consortium claims are derivative of their false imprisonment claim: by keeping plaintiffs incarcerated beyond their release dates, defendant allegedly interfered with the parent-child relationship and caused emotional distress. Because the sovereign has not waived its immunity for the underlying false imprisonment claim, plaintiffs cannot pursue their derivative emotional distress or loss of consortium claims. See Ward v. Brown, __ F. Supp.2d __, 2012 WL 3764041 at *25 (E.D. Cal. Aug. 29, 2012).

There is one element of plaintiffs' emotional distress claim that is not derivative of the false imprisonment or the misrepresentation claims, however. Plaintiffs have alleged that defendant engaged in retaliatory acts and made threatening statements to punish plaintiffs for complaining and/or seeking judicial relief. This conduct may constitute a separate and independent wrong. Because defendant has not shown that the retaliation claims are based on the misrepresentation and/or false imprisonment, the general FTCA waiver of sovereign immunity applies. The Court will therefore consider whether plaintiffs have stated a claim for intentional infliction of emotional distress upon which relief can be granted.

The Court finds that, under existing Ninth Circuit precedent, plaintiffs' misrepresentation and false imprisonment claims are expressly excepted from the general waiver provided by the FTCA and are not saved by the § 2680(h) proviso. The Court therefore lacks subject matter jurisdiction over these claims. Plaintiffs' loss of consortium claim is wholly derivative of the barred false imprisonment claim and is therefore also barred. Part of plaintiffs' emotional distress claim fails for the same reason. The Court has subject matter jurisdiction over only that portion of plaintiffs' intentional infliction of emotional distress claim related to the

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND           -7-

conduct alleged to be in retaliation for plaintiffs' complaints and/or judicial suits.

**C. Venue for Claims of Robert Bailey and Steve Carlson**

Plaintiffs Robert Bailey and Steve Carlson reside in Idaho and Arizona, respectively, and have asserted claims arising out of conduct and omissions that occurred in the State of Oregon. In these circumstances, the Western District of Washington is not the proper venue for their claims. 28 U.S.C. § 1402(a)(1) and § 1402(b). Plaintiffs, apparently recognizing that venue is improper here, request that the Court transfer venue over their claims to their home districts. Opposition (Dkt. # 18) at 10. The United States does not object to a transfer. Reply (Dkt. # 22) at 3.

**D. Failure to State a Claim**

    **1. Pleading Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In ruling on a motion to dismiss, the Court must assume the truth of the plaintiffs' allegations and draw all reasonable inferences in the plaintiffs' favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The allegations must give rise to something more than mere speculation that plaintiff has a right to relief. Twombly, 550 U.S. at 555. The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570. If the Court dismisses the complaint or portions thereof, it must consider whether the pleading could be cured by the allegation of additional

facts, even in the absence of a request for leave to amend. Watison v. Carter, 668 F.3d 1108, 1117 (9th Cir. 2012).

### 2. Claims Under 42 U.S.C. § 1981 and § 1983

In order to state a claim under § 1981 and § 1983 of the Civil Rights Act, plaintiffs must allege conduct taken "under color of state law. 42 U.S.C. § 1981(c); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Neither statute applies to actions taken by federal officials under color of federal law (see Russell v. U.S. Dept. of the Army, 191 F.3d 1016, 1019 (9th Cir. 1999); Nelson v. Everson, (W.D. Wash. June 29, 2007)), and plaintiffs have not alleged any facts from which state action could plausibly be inferred.

### 3. Intentional Infliction of Emotional Distress Arising From Retaliatory Acts[5]

To state a claim for intentional infliction of emotional distress under Oregon law, one must allege that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." Babick v. Or. Arena Corp., 40 P.3d 1059, 1063 (Or. 2002). Whether conduct is so outrageous in character and so extreme in degree as to be utterly intolerable in civilized society "is a fact-specific inquiry, based on the totality of the circumstances. . . . The totality of the circumstances includes the conduct itself as well as any special relationship of the parties, characteristics of the plaintiff that were known to the defendant, and the setting in which the conduct occurred." Schoen v. Freightliner LLC, 199 P.3d 332, 341 (Or. App. 2008) (internal citation omitted).

Defendant appears to concede that BOP officers hold a special relationship of power over prisoners. Plaintiffs allege that the officers intentionally set out to punish plaintiffs for complaining about the calculation of their release dates, not only assigning them extra duties

---

[5] To the extent plaintiffs' emotional distress arose from the alleged misrepresentation and/or false imprisonment, the claim has been dismissed for lack of subject matter jurisdiction.

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND            -9-

and telling them they could never win against the BOP, but also refusing to release Mr. Smith and Mr. Garza despite a court order. Plaintiffs allege that this conduct was intended to cause, and has caused, emotional distress and that past threats of retribution continue to make plaintiffs fearful and nervous.

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . . Where reasonable [persons] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." House v. Hicks, 179 P.3d 730, 736 (Or. App. 2008) (quoting Restatement (Second) of Torts § 46 comment h (1965)). Even taking into consideration the custodial nature of prison life and the gross disparity of power in the parties' relationship, the Court has serious doubts that the unspecified extra duties and negative statements are conduct that is "extraordinarily beyond the bounds of socially tolerable behavior." Checkley v. Boyd, 107 P.3d 651, 660 (2005). Oregon courts have already determined that being tyrannical, making derogatory, harsh, or intimidating statements, or threatening incarceration does not necessarily support a claim for intentional infliction of emotional distress. Kraemer v. Harding, 976 P.2d, 1160 (1999); Pakos v. Clark, 453 P.2d 682 (Or. 1969).

For purposes of this motion, the Court is willing to assume that a deliberate decision to ignore a court-ordered release date in order to punish plaintiffs for their complaints would fall outside the bounds of socially tolerable behavior under the tort of outrage. With regards to this particular aspect of plaintiffs' claim, the problem lies not with the nature of the conduct alleged, but with the adequacy of the supporting allegations. Plaintiffs offer nothing from which the Court could conclude that defendants ignored a court-ordered release date. The record suggests that Mr. Garza and Mr. Bailey were released the day after obtaining their writs of habeas corpus and that Mr. Smith was released more than a month before he was otherwise eligible under the either version of the RDAP guidelines.

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND            -10-

Plaintiffs' complaint is written in such a general, narrative way that their claim for relief for intentional infliction of emotional distress is merely possible, not plausible.  In the absence of specifics regarding what was said to each plaintiff, what duties/insults/threats they encountered, and the basis for their allegations of delay, a claim of outrage is merely a hypothetical exercise, giving rise to no more than the possibility that plaintiffs have a viable claim for relief.  Because plaintiffs may be able to allege additional facts that would nudge this claim into the realm of plausibility, they shall have an opportunity to amend.

For all of the foregoing reasons, defendant's motion to dismiss is GRANTED. Plaintiffs' breach of contract, false imprisonment, and loss of consortium claims are DISMISSED for lack of subject matter jurisdiction.  The portion of plaintiffs' emotional distress claim arising from the alleged false imprisonment is also DISMISSED for lack of subject matter jurisdiction.  The remaining claims asserted on behalf of Robert Bailey and Steve Carlson are hereby TRANSFERRED to the District Court of Idaho and the District Court of Arizona, respectively.  The § 1981 and § 1983 claims and that portion of their intentional infliction of emotional distress claim regarding defendant's efforts to punish plaintiffs for complaining about the calculation of their release dates asserted on behalf of Tim Smith and Ricky Garza are DISMISSED for failure to state a claim upon which relief can be granted.  Plaintiffs Smith and Garza may file a third amended complaint related to their retaliation-based outrage claim on or before February 1, 2013.  If no amended complaint is filed by that date or if the allegations do not remedy the deficiencies discussed in this order, this matter will be closed.

Dated this 17th day of January, 2013.

*Robert S. Lasnik* (signature)

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND                -11-